**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 28 2013, 5:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL D. GROSS**
Lebanon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HAKURU SIMAHA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 06A01-1301-CR-29 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Rebecca S. McClure, Judge
Cause No. 06D02-1209-CM-616

**August 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Hakuru Simaha ("Simaha") was convicted of one count of Possession of Marijuana, as a Class A misdemeanor,[1] and seven counts of Forgery, all as Class C felonies,[2] and was sentenced to an aggregate term of imprisonment of five years. He now appeals, raising for our review one issue, which we restate as whether the trial court abused its discretion when it admitted into evidence items obtained from a search of the vehicle in which Simaha was traveling.

We affirm.

## Facts and Procedural History

During the early morning hours of September 17, 2012, Officer Thomas Henthorn ("Officer Henthorn") of the Zionsville Police Department observed an eastbound vehicle cross the center line of Oak Street in Zionsville. Simaha was one of two passengers in the vehicle, which was driven by a third individual. Officer Henthorn followed the vehicle, used a dashboard-based video camera to record the vehicle's movements and saw the vehicle cross the center line of the road a second time. The vehicle carrying Simaha then turned off Oak Street, at which point Officer Henthorn initiated a traffic stop.

Upon approaching the vehicle and speaking to the driver, Officer Henthorn detected the odor of raw marijuana coming from inside the vehicle. Officer Henthorn observed that the driver was nervous; the driver's hands shook while holding the steering wheel, and he

---

[1] Ind. Code § 35-48-4-11(1).

[2] I.C. § 35-43-5-2(b)(3).

2

refused to make eye contact while speaking with Officer Henthorn.

Officer Henthorn asked the driver to exit the vehicle so that he could perform a pat-down search of the driver and place him into custody. Officer Henthorn then asked the driver whether there was marijuana in the vehicle and explained why he asked the question; the driver denied any knowledge of marijuana in the vehicle. Officer Henthorn put the driver in custody and waited for backup to arrive.

Once Officer Aaron Shook ("Officer Shook") arrived, Officer Henthorn performed a pat-down search of the driver and seated him on the curb of the road. Officer Henthorn then approached Simaha, who was in the rear passenger seat of the vehicle, and asked him to exit the car. When the car door opened, Officer Henthorn saw a round metallic object in the door handle; based upon his training and experience, Officer Henthorn recognized the object to be a marijuana grinder. Officer Henthorn noticed that the scent of marijuana from the rear passenger side of the car was much stronger than the scent at the driver's door, and Officer Shook also noticed the smell of raw marijuana when the door opened.

After Simaha exited the car, Officer Henthorn arrested Simaha. As he spoke with Simaha, Officer Henthorn noted that, based upon his speech, Simaha appeared to be intoxicated. After asking Simaha some questions, Officer Henthorn, concerned that Simaha might be carrying a weapon or might have other contraband on his person, performed a pat-down search of Simaha and found Simaha's wallet. Based on his training and experience, Officer Henthorn knew that a blade could be concealed inside a wallet, and thus looked inside Simaha's wallet. Though the wallet had several plastic cards in it, Officer Henthorn

3

found no drugs or other contraband. Officer Henthorn put the wallet back into Simaha's pocket and secured Simaha in the front passenger seat of the patrol car.

During this time, Officer Shook had spoken with the vehicle's other passenger, handcuffed him, and seated him on the curb next to the vehicle's driver. Officer Henthorn shined his flashlight at the passenger and saw green plant material on the passenger's shirt. Based upon his training and experience, Officer Henthorn believed the plant material to be marijuana.

After looking at the vehicle's other passenger, Officer Henthorn began to search the interior compartments of the vehicle. Along with the marijuana grinder, Officer Henthorn found a small amount of raw marijuana in the door handle of the rear passenger door. He also found numerous plastic credit and debit cards scattered on the front seat of the vehicle, in a zippered pouch in the glove compartment, and in the vehicle's console. Officer Henthorn also found a small amount of loose marijuana in the area of the driver's seat.

After completing a search of the vehicle, Officer Henthorn spoke with other officers who had arrived at the scene of the traffic stop. Officer Henthorn inquired whether the large number of plastic debit and credit cards located in the vehicle and on Simaha's person might be related to cases on which the other officers had worked. Subsequent investigation by the Zionsville Police Department, in cooperation with the United States Secret Service, determined that of sixty-seven gift cards recovered from the vehicle, fifty of the cards were fraudulent. (Tr. at 461-78; Ex. 35.)

On September 17, 2012, Simaha was charged with Possession of Marijuana, as a Class

A misdemeanor. On September 25, 2012, Simaha, pro se, filed a motion to suppress evidence obtained during the traffic stop.

On October 18, 2012, the State moved to amend the charging information to add two counts of Forgery, as Class C felonies; the trial court granted this motion on October 19, 2012. On October 25, 2012, the State moved to amend the two charges of Forgery and to add five additional counts of Forgery, as Class C felonies; the court granted these motions the same day.

On October 26, 2012, the trial court conducted a hearing on the motion to suppress evidence, during which Officers Henthorn and Shook testified.[3] On October 30, 2012, the trial court granted Simaha's motion to suppress only as it pertained to statements made prior to the issuance of a Miranda warning; the trial court denied Simaha's motion to suppress the evidence obtained from searches of his wallet and the vehicle.

A jury trial was conducted on November 27, 28, and 29, 2012. During the trial, Simaha timely objected to the admission into evidence of the items obtained from Officer Henthorn's search of the vehicle. The trial court overruled his objections. At the conclusion of the trial, Simaha was found guilty as charged.

On December 27, 2012, a sentencing hearing was conducted, at the conclusion of which judgments of conviction were entered and Simaha was sentenced to one year of imprisonment for Possession of Marijuana and four years of imprisonment for each count of Forgery. The sentences for all seven forgery convictions were run concurrent with one

---

[3] By this time, Simaha was represented by counsel.

another, with the sentence for Possession of Marijuana run consecutive to these, yielding an aggregate term of imprisonment of five years.

This appeal ensued.

**Discussion and Decision**

After a jury trial, Simaha appeals the trial court's denial of his motion to suppress evidence obtained as a result of Officer Henthorn's search of the vehicle. "Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection." Boston v. State, 947 N.E.2d 436, 444 (Ind. Ct. App. 2011). We determine whether there is substantial evidence of probative value to support the trial court's ruling. Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005). We do not reweigh evidence and construe conflicting evidence most favorably to the trial court's ruling. Widduck v. State, 861 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). We must also consider uncontested evidence favorable to the defendant. Id. The trial court's ultimate determination of the constitutionality of a search or seizure is, however, reviewed de novo. Harper v. State, 922 N.E.2d 75, 79 (Ind. Ct. App. 2010), trans. denied.

The Fourth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. The Indiana Constitution includes a nearly-identical provision. Ind. Const. art. I, § 11; Mitchell v. State, 745 N.E.2d 775, 785-86 (Ind. 2001). "A traffic stop of an automobile and temporary detention of its occupants constitutes a 'seizure'

within the meaning of the Fourth Amendment." Bush v. State, 925 N.E.2d 787, 789-90 (Ind. Ct. App. 2010) (citing Whren v. United States, 517 U.S. 809-10 (1996)), clarified on reh'g, 929 N.E.2d 897.

Police officers may stop an individual's vehicle when they observe minor traffic violations. State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006). "A traffic violation, however minor, creates probable cause to stop the driver of the vehicle." Id. Thus, where a police officer initiates a traffic stop of a vehicle upon observing a traffic violation, that stop is not unreasonable under the Indiana Constitution, even where the stop is a pretextual one. Id.; Osborne v. State, 805 N.E.2d 435, 439 (Ind. Ct. App. 2004), trans. denied. A traffic stop "justified solely by the interest in issuing a warning ticket can become unlawful if it [is] prolonged beyond the time reasonably required to complete that mission." Myers v. State, 839 N.E.2d 1146, 1149 (Ind. 2005) (quoting Illinois v. Caballes, 543 U.S. 405, 125 S. Ct. 834, 837 (2005)).

Simaha does not argue that Officer Henthorn lacked probable cause to stop the vehicle. Rather, Simaha contends that Officer Henthorn's warrantless search of the vehicle was improper because the car was not "readily mobile" within the meaning of the automobile exception to the warrant requirement. Id. at 1150. Thus, he argues, the trial court abused its discretion when it admitted into evidence the fruits of any search of the vehicle.

Reviewing prior case law on the warrantless search of automobiles, our supreme court held in Myers v. State, that where an automobile is "operational, or potentially operational," it is inherently mobile. Id. at 1152. Relying on the United States Supreme Court's

7

conclusion in <u>Maryland v. Dyson</u>, 527 U.S. 465 (1999), that "the automobile exception 'does not have a separate exigency requirement,'" the <u>Myers</u> Court held that "a vehicle that is temporarily in police control or otherwise confined is generally considered to be readily mobile and subject to the automobile exception to the warrant requirement if probable cause is present." <u>Myers</u>, 839 N.E.2d at 1152 (quoting <u>Dyson</u>, 527 U.S. at 467).

The requirements set forth in <u>Myers</u> and <u>Dyson</u> for the applicability of the automobile exception to the warrant requirement were satisfied here. Officer Henthorn had recently stopped the vehicle in which Simaha was traveling, had probable cause to stop the vehicle for a traffic violation, and because of the smell of marijuana had probable cause to detain the vehicle's occupants for longer than the period of time required to issue a traffic ticket. Simaha's contention that the vehicle was not readily mobile because there was no one immediately capable of driving the vehicle away from the scene does not, therefore, persuade us that Officer Henthorn's warrantless search of the vehicle violated Simaha's Fourth Amendment rights.

Nor are we persuaded by Simaha's argument that the warrantless search of the vehicle violated his rights under Article 1, Section 11 of the Indiana Constitution. Though the text of this provision is nearly identical to the Fourth Amendment of the United States Constitution, Indiana courts have given the two provisions "somewhat different interpretations." <u>State v. Hobbs</u>, 933 N.E.2d 1281, 1287 (Ind. 2010). Whether a search is reasonable under the Indiana Constitution depends upon the reasonableness of the conduct of the law enforcement officers executing the search. <u>Id.</u> "Relevant considerations in evaluating the reasonableness

of a search under all the circumstances include the degree to which the search or seizure disrupts the suspect's normal activities, and those facts and observations that support the officer's decision to initiate the search or seizure." Id. Also taken into consideration is "the extent of law enforcement needs" to engage in the challenged search. Litchfield, 824 N.E.2d at 361.

Here, Simaha argues that because all of the vehicle's occupants had been detained, the car was under police control and "was not mobile in any conventional sense," and thus police did not face an imminent need to search the vehicle without first obtaining a warrant. (Appellant's Br. at 10.) Yet police already had probable cause to search the vehicle based upon the smell of raw marijuana and the apparent intoxication of at least one occupant, and the marijuana grinder was in plain view of Officer Henthorn when Simaha opened his passenger door after the vehicle was stopped and probable cause arose to search the vehicle. See Justice v. State, 765 N.E.2d 161, 164-65 (Ind. Ct. App. 2002). Thus, we cannot conclude that the factors set forth by our supreme court weighed sufficiently in Simaha's favor as to make Officer Henthorn's search unreasonable under the Indiana Constitution. See Hobbs, 933 N.E.2d at 1287 (concluding that once there was probable cause that a vehicle held contraband, "the same considerations underlying the federal automobile exception support permitting the officers to secure the evidence without delay.")

## Conclusion

Officer Henthorn's search of the vehicle did not violate Simaha's rights under the United States and Indiana Constitutions. The trial court did not err when it admitted into

evidence the items recovered as a result of the search. We therefore affirm Simaha's convictions.

Affirmed.

MAY, J., and BRADFORD, J., concur.