## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 30 2018, 5:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Jonah Long
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jonah Long,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

October 30, 2018

Court of Appeals Case No.
49A02-1711-PC-2804

Appeal from the Marion Superior Court

The Honorable Richard Hagenmaier, Master Commissioner

Trial Court Cause No.
49G21-1610-PC-41034

**Robb, Judge.**

# Case Summary and Issue

[1]    Following a bench trial, Jonah Long was convicted of dealing in methamphetamine, a Class A felony, and resisting law enforcement, a Class A misdemeanor.  The trial court sentenced Long to thirty years in the Indiana Department of Correction.  On direct appeal, we affirmed Long's conviction. *Long v. State*, No. 49A04-1308-CR-392 (Ind. Ct. App. Mar. 26, 2014), *trans. denied.*  Thereafter, Long, pro se, filed a petition for post-conviction relief alleging ineffective assistance of both trial and appellate counsel which was denied by the post-conviction court.  Long, still acting pro se, now appeals the denial of post-conviction relief, raising five issues for our review which we consolidate and restate as whether the post-conviction court erred in denying Long's motion for post-conviction relief.  Concluding the post-conviction court did not err, we affirm.

# Facts and Procedural History

[2]    We summarized the facts and procedural history of this case in Long's direct appeal:

> On September 7, 2012, Indiana State Police Trooper Jeffrey Sego and several other officers conducted a narcotics investigation at a hotel in Indianapolis.  Sego went to a room and knocked on the door.  He knew that Long was registered as an occupant of the room.  Kami Clemens opened the door.  Clemens allowed Sego into the room, where he saw digital scales and glass pipes.

After speaking with Clemens, Sego advised the other officers to be on the lookout for Long, who was driving a silver Chrysler 300. Police officer Adam Buchta was stationed near the hotel in an unmarked car. He ran a license check on Long and learned that Long's license was suspended. Buchta also found a picture of Long, which he shared with Indiana State Trooper Dean Wildauer. Wildauer was also stationed in an unmarked car, farther from the hotel than Buchta.

Later, Wildauer saw Long driving a silver Chrysler 300 toward the hotel. Long turned onto the street that accessed the hotel's parking lot, but he failed to use his turn signal. Wildauer informed Buchta of Long's failure to use his turn signal.

Buchta saw Long approach the hotel. He activated his car's lights to signal Long to stop. Long entered the hotel's parking lot, "slammed [the car] into park," and got out. Long ran away, disregarding Buchta's commands to stop. He ran across a street and up a ramp to a nearby interstate highway. Buchta followed and watched Long run across the interstate, disrupting traffic. Long got away once he reached the other side.

Buchta returned to Long's car and took the keys out of the ignition. He also brought his canine to the Chrysler 300 and walked it around the car. The canine "alerted to the odor of a narcotic" coming from the car.

Sego searched the 300 without a warrant. He found paperwork bearing Long's name. He also found luggage in the trunk, and when he searched the luggage he saw a blue can of Doritos. Sego discovered that the bottom of the can could be unscrewed, and inside the bottom of the can he found two clear plastic baggies containing a substance that was later identified as methamphetamine. There was a total of 11.6 grams of methamphetamine in the baggies. Wildauer testified that the

quantity of methamphetamine Sego discovered is generally associated with a dealer rather than a user, because a user will consume methamphetamine as soon as he or she acquires it.

Later, Long talked with his acquaintance Tony Pedigo. Long told Pedigo he had to abandon his car at a hotel in Indianapolis because the police arrived. He further said he fled from the police by running across an interstate highway. Finally, Long told Pedigo he had left methamphetamine in the car.

The State charged Long with dealing in methamphetamine, possession of methamphetamine, and resisting law enforcement. Long waived his right to a jury trial and was tried to the bench.

*Id.* at *1-2 (citations omitted).

[3] During the bench trial, Long's trial counsel moved to suppress evidence resulting from the warrantless search of Long's vehicle. The State argued that because a canine had alerted to the vehicle, the automobile exception to the warrant requirement permitted officers to conduct a warrantless search. The trial court inquired about the issue of abandonment and the parties presented brief argument on that issue before the trial court denied Long's motion to suppress.

[4] Long also testified that he was in a different city on the date of the incident and he had later learned someone else was driving his vehicle. The State objected on hearsay grounds because Long had learned who was driving his vehicle through the comments of a third party. Long's trial counsel contended that Long's testimony should be admissible as a statement against penal interest and

the trial court sustained the State's objection. In Long's offer to prove, he testified that his girlfriend's best friend was driving his vehicle on the date of the incident and provided several photographs in support thereof.

[5] On July 15, 2013, the trial court found Long guilty of dealing in methamphetamine, a Class A felony, and resisting law enforcement, a Class A misdemeanor. On July 29, 2013, the trial court sentenced Long to thirty years for dealing in methamphetamine and one year for resisting law enforcement with the sentences to be executed concurrently at the Indiana Department of Correction.

[6] On direct appeal, Long's appellate counsel raised three issues: (1) whether the trial court erred by denying his motion to suppress the evidence discovered during the warrantless search of his vehicle; (2) whether the trial court erred by excluding evidence that someone else may have committed the crimes; and (3) whether the evidence was sufficient to sustain his conviction for dealing in methamphetamine. *Long*, No. 49A04-1308-CR-392 at *2-4. A panel of this court affirmed the trial court in all respects. *Id.* at *5.

[7] On September 19, 2016, Long filed a pro se petition for post-conviction relief. An evidentiary hearing was conducted on April 21, 2017, and on October 30, the post-conviction court issued written findings of fact and conclusions of law denying Long's petition. Long now appeals. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Standard of Review

[8] It is well established that post-conviction proceedings are not an opportunity for a super-appeal. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id*. A claim of ineffective assistance of counsel is properly presented in a post-conviction proceeding if the claim was not presented on direct appeal and a claim of ineffective assistance of appellate counsel is also appropriate for post-conviction review. *Id*. Since post-conviction proceedings are civil in nature, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

[9] A petitioner who has been denied post-conviction relief faces a "rigorous standard of review" on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001). In reviewing the judgment of a post-conviction court, we do not reweigh the evidence or reassess witness credibility and we consider only the evidence and reasonable inferences supporting the judgment. *Hall v. State*, 849 N.E.2d 466, 468-69 (Ind. 2006). We will affirm the post-conviction court's denial of post-conviction relief unless the evidence leads "unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002).

Before proceeding to the merits of this appeal, we pause briefly to emphasize that pro se litigants without legal training are held to the same legal standards as licensed attorneys. *Basic v. Amouri*, 58 N.E.3d 980, 983 (Ind. Ct. App. 2016). Pro se litigants must adhere to the rules of procedure and must be prepared to accept the consequences of their failure to do so, including waiver for failure to present cogent argument on appeal. *Id.* at 983–84. An appellate brief should be prepared so that each judge, considering the brief alone and independent of the transcript, can intelligently consider each question presented. *Pluard ex rel. Pluard v. Patients Comp. Fund*, 705 N.E.2d 1035, 1038 (Ind. Ct. App. 1999), *trans. denied*. We "will not search the record to find a basis for a party's argument" nor will we "search the authorities cited by a party in order to find legal support for its position." *Thomas v. State*, 965 N.E.2d 70, 77 n.2 (Ind. Ct. App. 2012), *trans. denied*. And we must not become an "advocate for a party, or address arguments that are inappropriate or too poorly developed or expressed to be understood." *Basic*, 58 N.E.3d at 984.

## II. Ineffective Assistance of Counsel

The standard for ineffective assistance of counsel is the same standard for both trial and appellate counsel. *Garrett v. State*, 992 N.E.2d 710, 719 (Ind. 2013). We review claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, the petitioner must show his counsel's performance was deficient and the lack of reasonable representation prejudiced him. *Id.* at 687.

[12] To satisfy the first prong, the petitioner must show counsel's representation fell below an objective standard of reasonableness and counsel committed errors so serious petitioner did not have the "counsel" guaranteed by the Sixth Amendment of the United States Constitution. *Garrett*, 992 N.E.2d at 718-19. To satisfy the second prong, the petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. These two prongs are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 326 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S.Ct. 2376 (2015). Therefore, "if it is easier to dispose of an ineffectiveness claim on one of the grounds instead of the other, that course should be followed." *Talley v. State*, 736 N.E.2d 766, 769 (Ind. Ct. App. 2000).

[13] Counsel is afforded "considerable discretion in choosing strategy and tactics, and we will accord those decisions deference." *Timberlake*, 753 N.E.2d at 603. And we recognize a strong presumption counsel rendered adequate legal assistance. *Id*. In order to overcome this strong presumption, a petitioner must offer "strong and convincing evidence." *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied*.

## A. Judicial Bias

[14] Long first argues both his trial and appellate counsel were ineffective for failing to raise the issue of judicial bias. Concluding Long waived the issue on post-

conviction relief, and that Long has failed to demonstrate prejudice even if properly presented, we disagree.

[15] Because "[t]he law presumes that a judge is unbiased and unprejudiced[,]" merely asserting judicial bias does not make it so. *Smith v. State*, 770 N.E.2d 818, 823 (Ind. 2002). "Such bias and prejudice exists only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding." *Id.* Adverse rulings are not sufficient of themselves to establish bias or prejudice. *Resnover v. State*, 507 N.E.2d 1382, 1391 (Ind. 1987). To rebut this presumption, a defendant "must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy." *Smith*, 770 N.E.2d at 823.

[16] As evidence of judicial bias, Long relies almost exclusively on the trial court sua sponte raising the issue of whether the abandonment exception supported the warrantless search of Long's vehicle. The underlying facts reveal officers attempted to conduct a traffic stop on Long's vehicle but Long disregarded their attempt and proceeded into a hotel's parking lot, "slammed [the car] into park," and ran away, further disregarding oral commands to stop. *Long*, No. 49A04-1308-CR-392 at *1. Officers discontinued a foot-pursuit once Long crossed interstate traffic and then walked a canine around Long's vehicle which "alerted to the odor of a narcotic[.]" *Id.* A subsequent warrantless search of the vehicle revealed 11.6 grams of methamphetamine. Long's trial counsel moved to suppress the evidence obtained from the warrantless search. At the suppression hearing, the State argued, relying on our supreme court's opinion

in *State v. Hobbs*, 933 N.E.2d 1281 (Ind. 2010), that a canine's alert on Long's vehicle provided an exception to the warrant requirement. Eventually, the trial court inquired:

| | |
|---|---|
| The Court: | Why is nobody talking about the abandonment issue? |
| [The State]: | Well, because we already have *State v. Hobbs*, that I didn't need to go into the abandonment issue. And we have a — |
| The Court: | Better — |
| [The State]: | — either way. |
| The Court: | Isn't it a better issue? |
| [The State]: | I think, I think we have it either way. |

Trial Transcript, Volume I at 99.

[17] With this background, the post-conviction court found:

> In this matter, the trial court never sought to adduce evidence, but instead, [Long]'s complaint to find bias or prejudice is in the trial court directing questions to the Party-Attorneys. [Long] argues, without citation to authority that the trial courts' [sic] mere inquiry as to applicability of the doctrine of abandonment constitutes bias or prejudice on behalf of the State. However, the cases he points to regarding bias and prejudice primarily deal with the court's questions to witnesses, or other matters which in some way reflect on the specific conduct or demeanor of the trial

judge. Though [sic] his case law, [Long] presents no compelling authority to establish that the [trial] court's questioning to party-attorneys is prohibited. Moreover, [Long] fails to establish that the judge's suppression questioning was designed for some other purpose than to have the parties make argument on what seemed a pertinent area of law. [Long's] failure to develop a cogent argument or provide adequate citation to authority or portions of the record generally results in waiver of [the] issue. These claim[s] ha[ve] been waived.

Appellant's Appendix, Volume 2 at 23-24 (citations omitted).

[18] We agree with the post-conviction court that Long's claims that trial and appellate counsel rendered ineffective assistance in failing to raise the issue of judicial bias are waived for lack of cogency. *See Ross v. State*, 877 N.E.2d 829, 833 (Ind. Ct. App. 2007), *trans. denied*. Indeed, aside from a perfunctory assertion the trial court was biased because it inquired into an issue which was potentially favorable to the State, Long's petition for post-conviction relief fails to advance a cogent argument as to *why* the trial court's inquiry demonstrated actual bias or *how* the inquiry placed him in jeopardy. *Smith*, 770 N.E.2d at 823. On direct appeal, we concluded "[t]he trial court sua sponte raised the issue of abandonment and gave both parties a chance to address it." *Long*, No. 49A04-1308-CR-392 at *2, n.1. And we continue to view the trial court's inquiry as merely an opportunity for *both* parties to make an argument on the issue of abandonment.

[19] Waiver notwithstanding, even assuming the trial court's inquiry into the abandonment exception demonstrated bias and trial counsel's performance was

therefore deficient in failing to object, Long has still failed to demonstrate prejudice because the evidence was otherwise admissible under the automobile exception. The "automobile exception" to the warrant requirement allows police to search a vehicle without obtaining a warrant if they have probable cause to believe evidence of a crime will be found in the vehicle. *Carroll v. United States*, 267 U.S. 132, 153-54 (1925). This doctrine is grounded in two notions: 1) a vehicle is readily moved and therefore the evidence may disappear while a warrant is being obtained, and 2) citizens have lower expectations of privacy in their vehicles than in their homes. *California v. Carney*, 471 U.S. 386, 391 (1985). One reason for this diminished expectation of privacy in a car and its contents is that cars travel along public highways and are subject to pervasive government regulation. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). Most cases addressing the automobile exception arise in the context of an arrest or an investigatory stop of a motorist that gives rise to probable cause, but the exception is grounded in the mobility of the vehicle and its location in a public area.

[20] As the Supreme Court explained in *Carney*, the automobile exception applies to vehicles that are readily mobile and are found in non-residential areas. 471 U.S. at 392-93. Thus, an operable vehicle found in a residential area may not be searched under this exception, but one located in a non-residential area, whether by reason of a traffic stop or not, is subject to the exception. The theory underlying the exception for vehicles is that the vehicle is "being used for transportation." *Id*. at 394.

In *State v. Hobbs*, the case cited by the State in support of admitting the evidence, officers positioned themselves across from a restaurant where officers were aware the defendant, who was wanted on an outstanding felony arrest warrant, was employed. 933 N.E.2d at 1284. Officers observed the defendant emerge from the restaurant, place something in his vehicle, and return inside. Officers then entered the restaurant and arrested the defendant. The defendant refused to consent to a search of his vehicle and the officers conducted a canine sniff which resulted in a positive alert and a warrantless search. The defendant was charged in connection with marijuana and paraphernalia found inside his vehicle. Sua sponte, the trial court ruled the evidence was illegally seized because even though the canine alert provided probable cause to search the vehicle, this was insufficient to justify a warrantless search. On the State's appeal, we reversed, holding the warrantless search of the vehicle was permissible under the automobile exception and the subsequent seizure therefore did not violate the Fourth Amendment or Article 1, Section 11 of the Indiana Constitution. *State v. Hobbs*, 915 N.E.2d 197 (Ind. Ct. App. 2009).

On transfer, our supreme court looked to *Carroll* and its progeny before reasoning:

> The defendant contends he "was not in any position to control any aspect of the vehicle." But the automobile exception does not require that there be an imminent possibility the vehicle may be driven away. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999). Under the exception, an operational vehicle is inherently mobile, whether or not a driver is behind the wheel or has ready access. With probable cause, this inherent mobility is enough to conduct

a warrantless search under the automobile exception. Nothing in the record indicates that [the defendant]'s vehicle was not operational. Because [the defendant]'s admittedly mobile vehicle was in the parking area of a restaurant, it was subject to the automobile exception and no warrant was required to search the vehicle if the officers had probable cause to believe it contained evidence of a crime.

Officers are not authorized to detain a person stopped under reasonable suspicion of a crime for a longer period than is required to resolve the suspicion. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). But here [the defendant] was arrested with probable cause supported by a warrant for a previous unrelated crime. He was not detained based on suspicion of the crimes charged in this case, and his detention was not prolonged at all by the call for the dog or the subsequent search and seizure.

The automobile exception requires probable cause to believe the vehicle contains evidence of a crime. The officers' own observations of [the defendant] entering the vehicle and placing something inside gave probable cause to believe the contents of the car were possessed by [the defendant]. The subsequent dog sniff provided probable cause that the vehicle contained illicit drugs. *Neuhoff v. State*, 708 N.E.2d 889, 891 (Ind. Ct. App. 1999). It is well settled that a dog sniff is not a search protected by the Fourth Amendment. *Caballes*, 543 U.S. at 409. Accordingly, no degree of suspicion is required to summon the canine unit to the scene to conduct an exterior sniff of the car or to conduct the sniff itself.

In sum, [the defendant]'s car was an operational vehicle in a public place; the dog sniff was not conducted under circumstances where [the defendant] was unconstitutionally seized, and the dog sniff provided probable cause that the car contained evidence of a crime. There therefore was no Fourth

> Amendment violation in the search of [the defendant]'s car or the seizure of the contraband found in the car.

933 N.E.2d at 1286-87 (some citations omitted).

[23] We find the facts presented here sufficiently analogous to those of *Hobbs* as to control on the issue of the automobile exception. Officers' observations of Long driving his vehicle removed any doubt as to whether the vehicle was operational and therefore "subject to the automobile exception and no warrant was required to search the vehicle if the officers had probable cause to believe it contained evidence of a crime." *Hobbs*, 933 N.E.2d at 1286. This observation also gave officers probable cause to believe the contents of the vehicle were possessed by Long. And once a canine "alerted to the odor of a narcotic," *Long*, No. 49A04-1308-CR-392 at *1, officers possessed probable cause that the vehicle contained illicit drugs. *Neuhoff*, 708 N.E.2d at 891. As in *Hobbs*, because Long's vehicle was operational in a public place, the canine search occurred under circumstances where Long was not unconstitutionally seized, and the canine sniff produced probable cause to believe the vehicle contained evidence of a crime, a warrantless search did not violate the Fourth Amendment. 933 N.E.2d at 1286-87.

[24] Therefore, because the evidence obtained from Long's vehicle was admissible on a basis other than abandonment, Long has failed to demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Garrett*, 992 N.E.2d at 719. For this same reason, Long failed to demonstrate ineffective assistance of appellate counsel for failing

to raise the issue of judicial bias as fundamental error. *See Allen v. State,* 749 N.E.2d 1158, 1168-69 (Ind. 2001) (holding that because claimed errors by trial counsel did not in themselves warrant relief, claims of ineffective assistance of appellate counsel for failure to raise the alleged errors by trial counsel would also fail), *cert. denied*, 535 U.S. 1061 (2002); *Benefield v. State*, 945 N.E.2d 791, 805 (Ind. Ct. App. 2011) (holding that where an appellant has failed to prove ineffective assistance of trial counsel, a finding of fundamental error on appeal is excluded).

## B. Admission of Commingled Evidence

[25] Next, Long argues his trial counsel rendered ineffective assistance for failing to object to the admission of certain evidence on "appropriate grounds." Appellant's Brief at 29. In order to prove ineffective assistance of counsel due to the failure to object, Long must prove that an objection would have been sustained if made and that he was prejudiced by the failure. *Timberlake v. State*, 690 N.E.2d 243, 259 (Ind. 1997), *cert. denied*, 525 U.S. 1073 (1999).

[26] During Long's trial, the State sought to admit evidence seized from a vehicle and a hotel room as State's Exhibit Number 2. Trial Tr., Vol. I at 104. Long's trial counsel objected to the admission of the evidence based on a "continuing objection that [the evidence was] seized illegally." *Id.* at 105.

[27] The exhibit was admitted over objection, but Long's trial counsel then engaged in the following questioning with the sponsoring witness:

[Trial Counsel]:     Your Honor, if I can ask just a clarifying
                     question on the Exhibit Number 2.

[The Court]:         Okay.

[Trial Counsel]:     Trooper, Exhibit Number 2 actually contains
                     more than just the Doritos container, it has
                     some pipes, a scale –

[Trooper Sego]:      Yes.

[Trial Counsel]:     --- in it.  Those items were not found in the
                     vehicle; is that correct?

[Trooper Sego]:      Correct.  Yes, ma'am.

[Trial Counsel]:     They were found in the hotel room?

[Trooper Sego]:      On a dresser in a hotel room.

[Trial Counsel]:     That where [sic] Ms. Clemens was located?

* * *

[Trooper Sego]:      Yes.

*Id.* at 106.  Thereafter, the State proceeded to move for the admission of State's

Exhibit Number 4, a lab report "entered by stipulation by the parties with a

caveat that there is a – it include [sic] a scale and two glass pipes which is [sic]

not at issue in this case." *Id*. at 107.  Long argues that because the exhibits

contained evidence not at issue in this case, his trial counsel was ineffective for not *also* objecting on grounds that the evidence was improperly commingled with other evidence.

[28] The post-conviction court found:

> From the record it is clear that the State's witnesses commingled and heat sealed the paraphernalia items recovered from the motel room, along with the Methamphetamine recovered from [Long]'s car.
>
> The Indiana Supreme Court has noted "[w]e generally presume that in a proceeding tried to the bench a court renders its decisions solely on the basis of relevant and probative evidence." *Coleman v. State*, 558 N.E.2d 1059, 1062 (Ind. 1990). This longstanding principle has been termed "the judicial-temperance presumption." The Court is convinced that a detailed trial record was made which allowed the trial court to readily comprehend what evidence was offered against [Long]. The clarity of the record allowed the trial court to disregard the extraneous paraphernalia. In this instance, the Court similarly applies the judicial-temperance presumption in favor of the trial court's ability to disregard admittedly irrelevant evidence.

Appellant's App., Vol. 2 at 27-28. The court then concluded:

> 10. The record clearly explains that trial evidence was mistakenly commingled. This court is persuaded that clear evidence was presented at trial as to what items supported a finding that [Long] was guilty of dealing in Methamphetamine. Given the clarity of the record, the Post-Conviction court applies the judicial-temperance presumption, and concludes that the commingled items of

> paraphernalia were disregarded by the trial court in deciding that [Long] was guilty.

*Id*. at 33-34.

[29] On appeal, Long argues the post-conviction court applied "the wrong standard, the judicial-temperance presumption doctrine, in its decision to deny relief." Appellant's Br. at 33. Instead, Long contends the correct standard was whether he "was denied effective assistance as required by *Strickland*." *Id*. at 34. However, viewed in context, the post-conviction court indeed applied the correct standard, basing its conclusion on Long's failure to establish prejudice—a conclusion with which we agree.

[30] The record clearly reflects that the parties stipulated the evidence recovered from the hotel room was not at issue in this case. Long's trial counsel engaged in questioning of the State's witness, Trooper Sego, clearly designed to notify the trial court of where each piece of evidence originated and that the evidence had been mistakenly commingled. As the post-conviction court noted, it is well-established that where, as here, the case is tried before the court, a trial judge is presumed to disregard improper evidence in reaching its decision. *Konopasek v. State*, 946 N.E.2d 23, 28 (Ind. 2011). And there is nothing in the record indicating that the trial court considered or relied upon the mistakenly commingled evidence in reaching its judgment. Therefore, we conclude that Long has failed to establish he was prejudiced by his counsel's failure to explicitly object to the evidence on grounds that it was improperly commingled.

# C. Hearsay Evidence

[31] Next, Long claims he received ineffective assistance of counsel because, despite knowledge of Long's intent to testify that someone else had driven his car on the date in question, his trial counsel "failed to make any effort whatsoever to summon the witness to trial to testify in person; therefore, Long could not rely on Rules 804s [sic] 'statement against interest' hearsay exception[.]" Appellant's Br. at 35. The post-conviction court concluded the issue was decided on direct appeal and was therefore res judicata. On appeal from the denial of his post-conviction petition, Long claims the post-conviction court erred "by failing to review this issue under the proper legal standard" because he had not raised the issue of ineffective assistance of trial counsel on direct appeal. *Id.* at 37. The State argues the post-conviction court correctly decided this issue as res judicata.

[32] The doctrine of res judicata bars a later suit when an earlier suit resulted in a final judgment on the merits, was based on proper jurisdiction, and involved the same cause of action and the same parties as the later suit. As a general rule, when a reviewing court decides an issue on direct appeal, the doctrine of res judicata applies, thereby precluding its review in post-conviction proceedings. The doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. And, a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error. [W]here an issue, *although differently designated*, was previously considered and determined upon a criminal defendant's direct appeal, the State may defend against defendant's post-conviction relief petition on grounds of prior adjudication or res judicata.

*Reed v. State*, 856 N.E.2d 1189, 1194 (Ind. 2006) (citations and quotation omitted).

[33] On direct appeal, we concluded:

> Long testified during his case-in-chief. He asserted that someone else drove his car on the day in question. During preliminary questioning by the State, Long conceded that his alleged knowledge of the purported driver's identity was based on what the purported driver had told him. The State objected to any further testimony on the purported driver's identity, claiming it was based on inadmissible hearsay. The court sustained the objection. Next, Long submitted an offer to prove, in which he provided the purported driver's name and submitted photographs of that person and of him for comparison. The State offered three photographs of the purported driver as part of the offer to prove. At the close of the offer, the court stated with respect to the photographs, "I'm not looking at any of them."
>
> Long made no effort to establish that the purported driver was unavailable to testify, so Rule 804 did not permit the admission of Long's evidence.

*Long*, No. 49A04-1308-CR-392 at *3-4 (citations to transcript omitted).

[34] We acknowledge that, at least on first glance, this issue does not appear to be res judicata because the basis for our decision on direct appeal was that "Long made no effort to establish that the purported driver was unavailable to testify," *id*. at *4, and Long asserts this as the basis for his claim of ineffective assistance of trial counsel on post-conviction relief. However, upon further inspection, we agree with the post-conviction court's disposition of this issue.

The requirement of reliability is embodied within the statements against interest hearsay exception, as reliability is the ultimate justification for this exception. *Bryant v. State*, 794 N.E.2d 1135, 1142-43 (Ind. Ct. App. 2003), *trans. denied*; Ind. Evidence Rule 804(b)(3). To qualify under this hearsay exception, the statement against interest must be incriminating on its face. *Jervis v. State*, 679 N.E.2d 875, 878 (Ind. 1997). On Long's direct appeal, after acknowledging trial counsel's failure to establish unavailability, we proceeded to explain:

> Furthermore, Long said the purported driver merely stated that he drove the car on the day in question. Long did not testify that the person told him he was driving the car at the time the police initiated the traffic stop, or that the person told him he fled from the police on foot, or that the person told him he was the owner of the methamphetamine. Without more, the mere statement that the person drove the car at some point on the day in question is not incriminating on its face. We also note that the purported driver made his statement to Long rather than to a disinterested witness, which undermines the statement's credibility. *See Bryant v. State*, 794 N.E.2d 1135, 1143 (Ind. Ct. App. 2003) (alleged confession was not statement against interest where statement did not match the circumstances of the crime at issue, was uncorroborated, and was made to the defendant), *trans. denied.* The court did not abuse its discretion in excluding Long's evidence on the identity of the purported driver.

*Long*, No. 49A04-1308-CR-392 at *4. Therefore, even if trial counsel had demonstrated the purported driver was unavailable to testify, Long's hearsay testimony was still inadmissible as a statement against interest under Indiana Evidence Rule 804(b)(3). Accordingly, res judicata acts to bar Long's attempt

at relitigating that which is essentially the same dispute. *Sweeney v. State*, 704 N.E.2d 86, 94 (Ind. 1998), *cert. denied*, 527 U.S. 1035 (1999).

[36] Even if the issue is not res judicata, Long has again failed to demonstrate prejudice. Two officers testified that they saw Long driving his vehicle and Long's acquaintance, Pedigo, testified that Long had told him that he was driving the vehicle, which contained methamphetamine, and that he fled once officers approached. The trial court allowed Long to testify that he was out of town on the date in question and that he left his vehicle at his girlfriend's house. The hearsay testimony Long sought to admit was simply that he had learned that someone else was driving his vehicle. Therefore, even if unavailability had been properly established and Long was permitted to present the hearsay testimony through the applicable exception, we are unconvinced there was a reasonable probability that, but for trial counsel's alleged error, the result of the proceeding would have been different. *Garrett*, 992 N.E.2d at 719.

## D. Cumulative Issues

[37] Finally, Long argues the cumulative errors of trial and appellate counsel entitle him to a new trial. We have determined that all of Long's claims that he received ineffective assistance of trial and appellate counsel are without merit, and "[t]rial irregularities which standing alone do not amount to error do not gain the stature of reversible error when taken together." *Kubsch v. State*, 934 N.E.2d 1138, 1154 (Ind. 2010). Therefore, as with each individual claim, Long is not entitled to relief on his claim of cumulative error.

# Conclusion

[38] The post-conviction court did not err in concluding Long is not entitled to post-conviction relief on his claims that he received ineffective assistance of trial and appellate counsel. Accordingly, we affirm.

[39] Affirmed.

Baker, J., and May, J., concur.